IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Tara Kay Cuvelier, | ) | Case No. 19-20562 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Tara Kay Cuvelier, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. 25-02009 |
| | ) | |
| v. | ) | |
| | ) | |
| NAVIENT CFC, NAVIENT PC TRUST, | ) | |
| NAVIENT SOLUTIONS, LLC, and MOHELA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PLAINTIFF'S FOURTH AMENDED COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY (11 U.S.C. § 523(a)(8)), VIOLATION OF DISCHARGE INJUNCTION (11 U.S.C. § 524(a)(2)), AND REQUEST FOR SANCTIONS (11 U.S.C. § 105(a))

**TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:**

Plaintiff Tara Kay Cuvelier ("Plaintiff"), by and through undersigned counsel, files this Fourth Amended Complaint to align the pleadings with verified evidence produced in the Court-ordered Initial Disclosures and alleges as follows:

I. NATURE OF THE CASE

1. This is an action to declare that Plaintiff's private student loan debts were not excepted from discharge under 11 U.S.C. § 523(a)(8), and to seek relief for post-discharge collection activity undertaken by Defendants in violation of the discharge injunction.

2. Per the Court's instruction on February 2, 2026, this action addresses the threshold legal question of whether the subject loans are "Qualified Education Loans" (QELs) before proceeding to factual discovery on undue hardship.

## II. JURISDICTION AND VENUE

3. On November 14, 2019, Plaintiff filed a voluntary petition for relief under Chapter 13, Case No. 19-20562.

4. This Court has core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.

5. Venue is proper in this district under 28 U.S.C. § 1409.

## III. PARTIES

6. Plaintiff Tara Kay Cuvelier is an individual residing at 7104 Washburn Rd, Millington, MI 48746.

7. Defendants Navient CFC, Navient PC TRUST, Navient Solutions, LLC (collectively "Navient"), and MOHELA are the owners, servicers, or agents responsible for the collection of the subject loans.

## IV. STATEMENT OF FACTS

8. Between 2005 and 2007, Plaintiff was an online distance-learning student at the Academy of Art University and the University of Maryland Global Campus.

9. During this entire enrollment period, Plaintiff resided with her parents at their home in Millington, Michigan while attending school.

10. The subject loans followed a "pass-through" disbursement trail; while funds were electronically sent to the schools, federal aid covered most of Plaintiff's institutional tuition and fees across the enrollment period (Exhibit A). Consequently, Plaintiff used the

surplus private loan proceeds to purchase specialized equipment and supplies required for her photography curriculum, including cameras, lenses, film scanners, and darkroom equipment (Exhibit B).

11. Because institutional costs were largely satisfied by federal aid, the addition of the private loan disbursements consistently resulted in total financial assistance that exceeded the Plaintiff's Cost of Attendance (COA) (Exhibit A).

12. Detailed accounting from the Academy of Art University confirms that these private loans resulted in significant surpluses above the Plaintiff's actual institutional needs; for example, in Fall 2006, the institution issued a refund which included most of the private loan amount (Exhibit P).

13. Mathematical comparison of official tuition reports (Exhibit D) and the National Student Loan Data System (NSLDS) records (Exhibit E) confirms that federal aid alone was sufficient to cover substantially all institutional costs.

14. The relevant loans are summarized as follows based on Defendants' internal tracking records (Exhibit C) and the current account status as of February 27, 2026 (Exhibit H):

    a. Loan ID 8080: Approved for $6,000.00; disbursed January 11, 2006; origination rate 9.75%; balance as of February 27, 2026: $27,262.XX (13.250% Variable);

    b. Loan ID 8098: Approved for $15,468.00; disbursed May 23, 2006; origination rate 6.25%; balance as of February 27, 2026: $49,596.XX (9.750% Variable);

    c. Loan ID 8106: Approved for $9,853.00; disbursed June 1, 2007; origination rate 9.75%; balance as of February 27, 2026: $39,979.XX (13.250% Variable);

    d. Total Demanded: $116,838.40 (Exhibit H).

15. During the bankruptcy case, Defendants filed Proofs of Claim 4-1, 5-1, and 6-1 (Exhibits M, N, and O). These filings notably contained blank "School Certification" boxes.

16. Defendants' initial disclosure produced an internal record (Exhibit C) which reflects a digital certification date; however, any such certification is mathematically contradicted by the school's own ledger showing that the loans resulted in disbursements far exceeding the Plaintiff's COA minus other financial aid (Exhibit P).

17. Furthermore, any reliance by Defendants on loan application representations is legally insufficient to overcome a discharge order where the objective statutory criteria of 26 U.S.C. § 221(d) were never met at origination.

18. Plaintiff received a general discharge in her Chapter 13 case on December 26, 2024.

19. Despite receiving notice of the discharge, Defendants have engaged in a relentless campaign of willful collection activity for a debt that was legally discharged, as evidenced by billing statements (Exhibit G and Exhibit K) and collection letters (Exhibit I and Exhibit J).

## V. DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(8)(B)

20. To be excepted from discharge under § 523(a)(8)(B), a private loan must meet the definition of a Qualified Education Loan (QEL) as defined in 26 U.S.C. § 221(d).

21. Under the strict formula of § 221(d), a loan only qualifies for non-dischargeable status if it was incurred solely to pay for "Qualified Higher Education Expenses," which the statute limits via a mandatory mathematical ceiling:

    a. The Ceiling: The school's official Cost of Attendance (COA) as defined in section 472 of the Higher Education Act of 1965;

     b. The Deduction: The total amount of all other financial assistance received by the student (e.g., Pell Grants, Federal Stafford Loans, and Federal Supplemental Educational Opportunity Grants or "SEOG");

     c. The Result: Any loan amount exceeding the difference between (a) and (b) is, by definition, not a QEL and is therefore a dischargeable consumer debt.

22. Based on official IPEDS Reports (Exhibit D), NSLDS records (Exhibit E), and the Mathematical Summary of Over-Awards (Exhibit F), the subject loans failed this test at the moment of origination.

23. Specifically, in Fall 2006, Plaintiff's institutional costs were substantially satisfied by federal aid, yet Defendants disbursed a private loan for $5,652.00, and the Plaintiff was subsequently issued a refund which included the entire private loan amount (Exhibit P).

24. Because these loans were approved in amounts that objectively exceeded the statutory formula, and because Defendants maintain no internal process to verify statutory compliance under § 221(d) at origination or during collection, they are not QELs and were fully discharged by the December 26, 2024, Discharge Order.

## VI. VIOLATION OF DISCHARGE INJUNCTION AND REQUEST FOR SANCTIONS

25. Following the December 26, 2024, discharge, Defendants have engaged in willful collection activity, including demanding a current balance of $116,838.40 (Exhibit H).

26. This activity includes several threatening collection letters, such as the August 19, 2025, notice stating Plaintiff's loans were "headed for default" (Exhibit L).

27. Defendants have acted in complete disregard of the Fifth Circuit's ruling in *Crocker v. Navient Sols., L.L.C.* (In re Crocker), 941 F.3d 206 (5th Cir. 2019), by failing to perform any mathematical analysis under § 523(a)(8)(B) and § 221(d) prior to pursuing collection.

28. Discovery confirms that while Defendants track interest rates and approvals (Exhibit C), they maintain no internal logic or automated process to verify the mandatory statutory COA variables against financial assistance received.

29. Rather, Defendants' entire defense against the discharge injunction rests on the existence of a certification by a third party, which is legally insufficient to override the objective mathematical requirements of the statute.

30. Consequently, Plaintiff seeks sanctions under 11 U.S.C. § 105(a) to compel Defendants to implement a compliant COA-analysis protocol for all private loans to prevent future systemic violations of the discharge injunction.

VII. PRAYER FOR RELIEF

31. Plaintiff respectfully requests that the Court declare the subject loans discharged, award actual damages and attorneys' fees, and impose sanctions sufficient to deter future violations.

Dated: February 27, 2026

Respectfully submitted,

OLIVA LAW
223 W. Nolana Ave.
McAllen, Texas 78504
(956) 683-7800 phone
(866) 868-4224 fax

By: /s/ Marcos D. Oliva
Marcos D. Oliva
marcos@oliva.law
SBOT 24056068
Federal I.D. 948435
ATTORNEY FOR PLAINTIFF